## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ---------------------------------------------- x | | |
| **MARK CERINI,** on behalf of himself and similarly situated employees, | : : : | |
| *Plaintiff,* | : : | **Civil Action No. 2:20-cv-867 RJC** |
| v. | : : | **Electronically Filed** |
| **MONRO, INC.,** | : : | |
| *Defendant.* | : : | |
| ---------------------------------------------- x | | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED <u>MOTION FOR ENTRY OF THE APPROVAL ORDER</u>

## I.    Introduction and Procedural History

This wage and hour lawsuit against Defendant Monro, Inc. ("Monro" or "Defendant") has been settled, and Named Plaintiff Mark Cerini ("Plaintiff") respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Entry of the Approval Order. Now, after Plaintiff and the Opt-In Plaintiffs have signed the Settlement Agreement,[1] and for the reasons stated herein, final approval of this settlement is appropriate.[2]

In this lawsuit, Plaintiff alleges that Defendant had common company policies and practices of requiring Store Managers to cover cash and inventory shortages from their own pockets and, as a result, was not properly paying overtime wages under the FLSA. Plaintiff contends that he was not paid properly for his overtime wages as a result of allegedly common policies and practices, and that other Store Managers were also not being properly paid. Plaintiff further asserts that these policies and practices violate the provisions of the Fair Labor Standards Act ("FLSA"). Defendant has denied, and continues to deny, that it violated any applicable law and contends that it has paid its Store Managers properly.

In the course of conducting discovery and court-annexed mediation in this matter, Plaintiff and proposed Collective Action Counsel determined that a fair, adequate, and reasonable

---

[1] A copy of the Settlement Agreement is attached to Plaintiff's Unopposed Motion for Entry of the Approval Order as Exhibit 1.

[2] Unlike many settlements of wage-and-hour actions, this settlement does not involve a Rule 23 class action. Rather, the settlement involves the individual FLSA and related state overtime and wage claims of Plaintiff Cerini, the four (4) Opt-In Plaintiffs, and the claims of only those "Collective Action Members" who affirmatively accept the offers made to them as part of the settlement. Thus, the Parties are not asking for, nor do they require, preliminary or final approval of a class under Rule 23(b) and/or Rule 23(e). *See, e.g., Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *1 (W.D. Pa. Oct. 22, 2019) (Ranjan, J.) (approving settlement and retaining jurisdiction to manage settlement notice process); Order, *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR (W.D. Pa. Oct. 22, 2019, ECF No. 54) (approving settlement agreement and directing the parties to submit a status report advising the Court of the parties' progress toward completing the notice and claims process on January 22, 2020); Approval Order, *Lanning v. Petco Animal Supplies, Inc.*, 2:18-cv-000247-AJS (Nov. 26, 2018, ECF No. 65) (Schwab, J.) (approving settlement and retaining jurisdiction to manage settlement notice process); Notice of Report of Settlement Administrator, *Lanning v. Petco Animal Supplies, Inc.*, 2:18-cv-000247-AJS (Feb. 21, 2019, ECF No. 66).

settlement could and should be achieved for Defendant's current and former Store Managers who worked in Pennsylvania and New York. The Settlement reflects that determination and was reached only after: conducting research of the facts and law prior to the filing of the original complaint; conducting document discovery, witness investigations, and depositions; preparing a detailed analysis of Defendant's time and pay records from multiple states, with the eventual concentration on the time and pay records of every collective member; conducting extensive review of documents from Monro and witness investigations pertaining to the application of cash and inventory policies; participating in a full-day mediation session with Louis Kushner, Esquire; and, extensive arm's-length negotiations between counsel before a settlement could be reached.

The Settlement includes a gross maximum settlement amount of Four Million Four Hundred Fifty Thousand Dollars ($4,450,000) (the "Maximum Gross Settlement Amount"). The Parties have agreed that the Maximum Gross Settlement Amount shall be allocated to the Collective Action Member Settlement Amount, the Administrative Costs, the Plaintiffs' Service Awards, and the Attorneys' Fees and Expenses Payment. (*See* Settlement Agreement, ¶ 1.15(a)–(d).) The Parties believe the Settlement is fair, reasonable, and beneficial to the Plaintiffs (Plaintiff Mark Cerini and the 4 Opt-In Plaintiffs) and to the Participating Collective Action Members (as defined in ¶ 1.6 of the Settlement Agreement) within the meaning of the FLSA.

In exchange, Plaintiffs (Plaintiff Mark Cerini and the 4 Opt-In Plaintiffs) and the Participating Collective Action Members will release the wage and hour claims that were or could have been asserted in the Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, liquidated or other damages at any time through and including the respective Participating Collective Action Members' dates of signature. *See* Settlement Agreement ¶ 5.1.

Consistent with the Settlement Agreement (*see* Settlement Agreement § 3), the Administrator will mail, via U.S. First Class Mail and email (where known), to each Collective Member's last known address and email address (where known), a Notice of Settlement (Settlement Agreement, Exhibit C), along with a Claim Form (Settlement Agreement, Exhibit D). The Notice of Settlement will specify the recipient's specific Individual Collective Action Member Allocation. Collective Action Members who wish to become Participating Collective Action Members shall affirmatively sign and return their Claim Form (via U.S. First Class Mail, facsimile, and/or to the case-specific email address provided by the Settlement Administrator) to the Settlement Administrator during the Claims Period. (*Id.* ¶ 3.4.) Only those Collective Action Members who affirmatively sign and return their Claim Form, which includes a consent to join this action, will become Participating Collective Action Members and will be bound by the terms of the Settlement Agreement. Within 14 days following the expiration of the Claims Period, the Settlement Administrator will provide Collective Action Counsel and Defense Counsel with a comprehensive report identifying the Participating Collective Action Members and their corresponding Individual Collective Action Member Allocation. Collective Action Counsel will file with the Court a listing of all Participating Collective Action Members and their respective Individual Collective Action Member Allocation no later than 14 days after receipt of the report from the Settlement Administrator. The Settlement Administrator will also provide the original executed Claim Forms to Defense Counsel with a copy to Collective Action Counsel. (*Id.* ¶3.6.) Payment Obligations shall be met consistent with the Settlement Agreement. (*Id.* ¶¶ 4.1-4.7.)

The Settlement Agreement satisfies all of the criteria for approval under the FLSA. Accordingly, Plaintiff requests that the Court issue an order:

4

1) Granting approval of the Settlement Agreement in accordance with the Fair Labor Standards Act of 1938 (29 U.S.C. §201, et seq.) and administration according to its terms;

2) Approving the distribution of monies to Plaintiffs (Plaintiff Mark Cerini and the 4 Opt-In Plaintiffs) and to the Participating Collective Action Members and approving the release of FLSA and other claims consistent with the Settlement Agreement;

3) Approving payment of Plaintiffs' attorneys' fees and expenses in the amount of $1,335,000, which is thirty (30%) of the Maximum Gross Settlement Amount, to be paid out of the Maximum Gross Settlement Amount;

4) Enjoining Plaintiffs and Participating Collective Action Members from prosecuting any Released Claims against Defendant or Released Parties;

5) Dismissing this action with prejudice; and

6) Retaining jurisdiction to oversee the administration of the Settlement Agreement according to its terms.

Defendant does not oppose this motion, and Plaintiff has submitted a proposed Approval Order for the Court's consideration.

## II.    The Proposed Settlement Furthers the Purpose of the FLSA

The settlement furthers the purposes of the FLSA by providing Plaintiffs (Plaintiff Mark Cerini and the 4 Opt-In Plaintiffs) and the Participating Collective Action Members with substantial recovery for their unpaid overtime and related wages that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover.  *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency . . . ."); *see also, e.g.*, *Imhoff v. Weatherford International, LLC, et al.*, Case No. 2:15-cv-679-AJS (W.D. Pa.); *Dunkel v. Warrior Energy*

*Services Corp.*, Case No. 2:13-cv-695-MRH (W.D. Pa.); *Boyington v. Percheron Field Services, LLC*, Case No. 3:14-cv-90-KRG (W.D. Pa.).

In addition, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace.  The release that will apply to Participating Collective Action Members is limited to the claims that were or could have been asserted in the Amended Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, liquidated or other damages at any time through and including June 12, 2021.  *See* Settlement Agreement ¶5.1.  This form of release is standard in wage-and-hour settlements and is consistent with the purposes of the FLSA.  *See, e.g.*, *Tumpa v. IOC-PA, LLC*, Civil Action No. 3:18-cv-112, 2021 U.S. Dist. LEXIS 2806, at *8–9 (W.D. Pa. Jan. 7, 2021) (Haines, J.); *Carney v. Travelers Aid Soc'y of Phila.*, No. 19-3599, 2020 U.S. Dist. LEXIS 24818, at *13 (E.D. Pa. Feb. 11, 2020).  Finally, the Settlement Agreement shall be binding on only those Collective Action Members who affirmatively choose to participate in the settlement by filing a claim form with the Settlement Administrator; Collective Action Members who do not file claim forms will not be bound by the Settlement Agreement and thus will not be bound by any release in the Settlement Agreement.

In short, because the Settlement Agreement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, *see infra* Sec. III, it should be approved by this Court in the proposed Approval Order.

## III.   The Proposed Settlement Is Substantively Fair and Reasonable, and It Should Be Approved under the FLSA

A district court may approve a settlement of an FLSA collective action if the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere

waiver of statutory rights brought about by an employer's overreaching." *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *2.  This Court should find the Settlement meets this requirement.

### A.  <u>The Court should apply a presumption that the Settlement is reasonable.</u>

When the litigants presenting an FLSA settlement for approval are represented by competent counsel who have reached the settlement through a formal mediation process with an experienced mediator, the court may begin with "a strong presumption" that the settlement is reasonable. *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *7.

The Court should apply a strong presumption of reasonableness here.  Proposed Collective Action Counsel have extensive experience in litigating and settling FLSA collective actions.  *See* Exs. A - C (Declarations of proposed Collective Action Counsel).[3]  Defendant Monro, a publicly-traded company, is represented by sophisticated and experienced counsel who have defended numerous FLSA collective actions.  Counsel for the litigants reached the Settlement after substantial adversarial litigation and through an arm's-length mediation process before Louis B. Kushner, Esquire, a distinguished mediator who is regularly appointed through this Court's court-annexed mediation program.  *See* Ex. A at ¶ 7.  Accordingly, the Court should apply a strong presumption the Settlement is reasonable.

---

[3] Proposed Collective Action Counsel have effectively litigated and obtained settlement approval in this Court for numerous collective actions under the FLSA.  *See, e.g.*, *Clark v. Warrior Energy Services Corp.*, Case No. 3:16-cv-00052-KRG (W.D. Pa.); *Ringler v. Norwin Technologies*, Case No. 2:17-423-AJS (W.D. Pa.); *Bastin v. Integrated Production Services, Inc.*, Case No. 2:15-882-NBF (W.D. Pa.); *Dunkel v. Warrior Energy Services, Inc.*, C.A. No. 2:13-cv-695-MRH (W.D. Pa.); *Imhoff, et al. v. Weatherford International LLC, et al.*, C.A. No. 2:15-cv-679-AJS (W.D. Pa.); *Tvrdovsky, et al. v. Renegade Wireline Services (RWLS)*, C.A. No. 2:13-1463-JFC (W.D. Pa.); *Black v. Wise Intervention Services, Inc.*, Case No. 2:15-cv-453-MPK (W.D. Pa.); *Naicker v. Warrior Energy Services, Inc.*, Case No. 2:14-cv-1140-MRH (W.D. Pa.); *Haught v. Summit Resources, LLC*, Case No. 1:15-cv-069-JEJ (M.D. Pa.); *Riggs v. Senior Choice, Inc., d/b/a The Patriot*, Case No. 3:15-cv-00057-KRG (W.D. Pa.); *Dull v. Integrated Production Services, Inc.*, Case No. 2:14-cv-1437-NBF (W.D. Pa.).

**B.     The Settlement is a fair and reasonable compromise of a _bona fide_ dispute.**

The Court should conclude that the Settlement resolves a "bona fide" dispute and constitutes a "fair and reasonable" compromise of that dispute.

### 1.     The Settlement resolves a _bona fide_ dispute.

"[F]or a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." _Kapolka v. Anchor Drilling Fluids USA, LLC_, 2019 U.S. Dist. LEXIS 182359, at *4 (W.D. Pa. Oct. 22, 2019).  The Court should have no trouble finding that a _bona fide_ dispute exists in this case.  The claims of the alleged collective action are FLSA claims premised on the assertion that Defendant Monro, as a matter of policy and practice, required Store Managers in New York and Pennsylvania to cover cash and inventory shortages from their own pockets, resulting in overtime wages owed to members of the collective action under the FLSA. Throughout this litigation, Defendant Monro has vehemently denied the existence of this alleged policy.  _See_ ECF No. 18 (Answer to Complaint) at 4; ECF No. 35 (Answer to Amended Complaint) at 4–5.  Indeed, even though Monro has agreed to the Settlement, Monro continues to deny the existence of the alleged policy.  The Court should conclude that the Settlement is the resolution of a _bona fide_ dispute.

### 2.     The Settlement is fair and reasonable.

The standard for court approval of settlements under the FLSA—_i.e._, the requirement that the settlement is "fair and reasonable"—is different than the standard for settlements of class actions under Rule 23.  Because it does not seek to bind members of a putative class unless they affirmatively opt-in, "an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the proposed settlement reflects a fair and reasonable

8

compromise of disputed issues that were reached as a result of contested litigation." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).  A rigid application of the settlement framework for class actions is "neither required nor appropriate in the FLSA context." *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *8.

Nonetheless, as a reference for reviewing the fairness of FLSA settlements, district courts often consider the *Girsch* factors that are applied in the Rule 23 settlement context.  *See Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *8 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). The Court should consider the *Girsch* factors here and readily conclude that the Settlement is a "fair and reasonable" compromise of this action.

The first *Girsch* factor—the "complexity, expense, and likely duration of the litigation"—weighs strongly in favor of the Settlement.  To finish litigation of this action through full discovery, a trial, and appeals, would likely take more than two years and involve large volumes of additional documents, emails, complex data analyses, and dozens of depositions.  Full litigation would be complicated and expensive for all parties, and there is no guarantee that Plaintiffs or the proposed collective action would obtain any greater recovery at the end of that process.

The second *Girsch* factor—the "reaction of the class to the settlement"—does not weigh for or against the Settlement.  Rather, the second factor "is not directly applicable in the context of an FLSA collective action, where the settlement class will consist of voluntary opt-in plaintiffs." *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *10.

The third *Girsch* factor—the "stage of proceedings and amount of discovery completed"—weighs in favor of the Settlement.  Before reaching the Settlement, proposed Collective Action Counsel engaged in substantial fact investigation and the parties conducted extensive written

discovery and depositions of key witnesses.  Indeed, with this Court's leave, the parties twice postponed court-annexed mediation in order to conduct additional formal discovery, so that both sides of the case would have a greater understanding of the merits and likelihood of success in full litigation.  *See* ECF No. 41; ECF No. 43.  Before reaching the Settlement, proposed Collective Action Counsel also diligently pursued and analyzed key records, including more than three years of Monro's inventory-shortage reports and bank-deposit shortage reports (spanning more than 30,000 pages), and more than three years of time and pay records of the Store Managers in the proposed collective action.  These substantial discovery efforts have provided both sides a strong grasp on the merits of the action and its fair and reasonable settlement value.  The third *Girsch* factor thus weighs in favor of approval.

The fourth, fifth, and sixth *Girsch* factors—relating to the risks of maintaining a class, establishing liability, and establishing damages—all weigh in favor of approval.  Although proposed Collective Action Counsel is confident in the Plaintiffs' ability to maintain a collective action through trial and establish liability and damages, Monro has not conceded these points and there is no guarantee the Court would grant an opposed motion for certification, nor is there any guarantee that Plaintiffs would be able to establish (over Monro's vehement denial) an unlawful policy and practice that would expose Monro to overtime liability.  *See* ECF No. 18 (Answer to Complaint) at 4; ECF No. 35 (Answer to Amended Complaint) at 4–5.  There is also no guarantee that Plaintiffs would be able to defeat Monro's "safe harbor" defense, which Monro contends would insulate Monro from any liability should the case proceed through full litigation.  *See, e.g.*, ECF No. 35 (Answer to Amended Complaint) at 15.  These risks all weigh in favor of approving the Settlement.

The seventh factor—"the ability of the defendants to withstand a greater judgment"—was not a significant factor in the negotiation of the Settlement.

The eighth factor—"the range of reasonableness of the settlement fund in light of the best possible recovery"—weighs in favor of approving the Settlement.  According to proposed Collective Action Counsel's understanding of the facts and their calculations and estimates of potential damages, the Maximum Gross Settlement Amount represents a substantial recovery of the total damages that the proposed collective action could reasonably expect to recover.  This recovery, which will avoid the delay and risk of litigation, is well within the reasonable range. *See, e.g.*, *Douglas v. Allied Universal Sec. Services*, 17-cv-6093-SJB, 2020 WL 6323691, at *3 (E.D.N.Y. May 6, 2020) (approving net settlement equaling approximately 50% of wages owed); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (finding that eighth settlement factor weighed in favor of approval where settlement was "approximately 38% of the estimated value of the case").

The ninth factor—the "range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation"—is perhaps the strongest factor weighing in favor of final approval.  As noted above, under the Settlement, the Participating Collective Action Members will obtain a substantial recovery that is not subject to the myriad risks that would be attendant on a collective action like this one.  Although proposed Collective Action Counsel is confident in the merits of the action, Monro continues to deny liability and has raised defenses and arguments that would require additional evidence to overcome.  Monro has produced policy documents concerning its policies regarding cash shortages and inventory shortages, and those written policies do not expressly require Store Managers to cover shortages.  In addition, Monro has presented discovery answers and deposition testimony that expressly deny the existence of the

policies and practices on which the FLSA claims are alleged.  Despite these numerous risks, the recovery that collective action members will receive under the Settlement is substantial—indeed, by filing a claim form, thirty-nine of the collective action members will receive more than $10,000 each, more than 200 collective action members will receive more than $5,000 each, and more than 650 collective action members will receive more than $1,000 each.  Based on proposed Collective Action Counsel's extensive knowledge and experience in this area of the law, they believe the amounts negotiated by the Parties for resolution of the claims are an excellent result for the proposed collective action.  *See* Exs. A-C.

In consideration of all these factors, the Court should grant approval to the Settlement Agreement, especially given that "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement[.]"  *Hall v. ProSource Techs., LLC*, 14-CV-2502 (SIL), 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016).

## IV.    The Proposed Service Awards for the Named Plaintiff and Four Opt-in Plaintiffs are Reasonable and Should be Approved

Pursuant to the Settlement Agreement, Defendant has agreed to pay no more than $72,500 to named Plaintiff Mark Cerini ($30,000), opt-in Plaintiff Richard Claycomb ($7,500), opt-in Plaintiff Mike Engels ($20,000), opt-in Plaintiff Richard Maddock ($7,500), and opt-in Plaintiff Michael Reynolds ($7,500) for their efforts in brining and prosecuting this matter and in exchange for their additional Released Claims executed in favor of Defendant as set forth in the Settlement Agreement.  *See* Settlement Agreement ¶¶ 1.15(c) & 5.2.  Subject to Court approval, these amounts will be paid to these respective individuals in addition to their respective settlement allocations as Participating Collective Action Members.

The purpose of service awards "is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation."  *Sullivan v. DB*

*Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (quotations omitted).  "Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 U.S. Dist. LEXIS 38663, at *64-65 (D.N.J. Apr. 8, 2011) (collecting cases).  Service awards also "reward the public service of contributing to the enforcement of mandatory laws. *Id.* at *33.

The service awards here are in line with the awards typically granted in this Circuit.  *See, e.g.*, *Foster v. Kraft Foods Grp., Inc.*, 2013 U.S. Dist. LEXIS 25442, at *6 (W.D. Pa. Jan. 15, 2013) (Bissoon, J.) (approving more than $115,000 in service awards to 9 named and opt-in Plaintiffs); Order, *Alvarez v. BI Inc.*, No. 16-2705 (E.D. Pa. June 2, 2020), ECF No. 94 (approving $15,000 in service awards per plaintiff in FLSA settlement); *Badia v. HomeDeliveryLink, Inc.*, No. 2:12-6920 (WJM), 2015 U.S. Dist. LEXIS 129033, at *24 (D.N.J. Sep. 25, 2015) (awarding $15,000 to each of five plaintiffs and awards of $5,000 and $2,000 to two other plaintiffs in settlement of wage and hour misclassification action); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 U.S. Dist. LEXIS 60790, at *36 (E.D. Pa. July 16, 2009) (Schiller, J.) (awarding $20,000 each to three named Plaintiffs in settlement of hybrid wage and hour class and collective action); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976, at *25 (E.D. Pa. Dec. 1, 2004) (awarding service award of $20,000 each to two named plaintiffs); *Texas v. Organon USA Inc.*, Nos. 02-2007 (FSH), 04-5126 (FSH), 2005 U.S. Dist. LEXIS 27011, at *94 (D.N.J. Sep. 13, 2005) (approving $30,000 each in incentive awards to two named plaintiffs who "complied with all reasonable [discovery] demands and provided significant assistance to counsel in the prosecution of the case").

The proposed service awards here reflect the substantial contributions by the named and opt-in Plaintiffs to the litigation and the inherent risk to these individuals by prosecuting the litigation. The named and opt-in Plaintiffs were the driving forces behind the prosecution of this litigation and the negotiations that culminated in this settlement. Plaintiff Cerini brought this action, worked closely with Plaintiffs' counsel to identify potential witnesses to depose, assisted Plaintiffs' counsel with the defining of the claims in this action, responded to substantial discovery from Defendant, sat for a full day deposition, provided a fact declaration to assist with the settlement process, and participated in a full day mediation. Ex. A ¶ 13. Plaintiff Engels provided critical insight into the Defendant's operations, significant assistance in the identification of potential fact witnesses, provided a fact declaration to assist with the settlement process, and worked closely with Plaintiffs' counsel to secure this settlement. *See* Ex. A ¶ 13. Each of the other opt-in Plaintiffs worked closely with Plaintiffs' counsel to identify practices to support the claims in this action and each provided a fact declaration to assist with the settlement process. *See* Ex. A ¶ 13. Each of the named and opt-in Plaintiffs worked closely with Plaintiffs' counsel, providing background information about their employment, about Defendant's policies and practices, and about the allegations in this lawsuit. *See* Ex. A ¶ 13. Moreover, each risked their reputations in the community and in their field of employment to participate in this case on behalf of the proposed collective. *See, e.g.*, *Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation").

For these reasons, the Court should approve the incentive awards to which the Parties agreed in the Settlement.

## V.    The Request for Attorneys' Fees and Expenses Should be Approved

Under the Settlement, the Parties have agreed to payment of Plaintiffs' attorneys' fees and expenses of the amount of $1,335,000, which is thirty percent (30%) of the Maximum Gross Settlement Amount, to be paid out of the Maximum Gross Settlement Amount.  (*See* Settlement Agreement ¶ 1.15(a).)

The fees and expenses agreed under the Settlement are reasonable and represent a fair payment to Plaintiffs' attorneys for the time and expense devoted to this matter, the risk they undertook in pursuing this matter on a contingency-fee basis, and the contribution made by counsel to the relief obtained. Plaintiffs' counsel devoted substantial time and effort in the skillful prosecution and settlement of this matter.  Each of the factors that courts in this Circuit use to evaluate attorneys fees' provisions in FLSA settlements strongly support approval of the settlement.[4]  For the reasons detailed below and in note 4, and in the supporting declarations of

---

[4] Courts consider 10 factors related to the appropriateness of attorneys' fees and costs.  Some of these factors are inapplicable in certain settlement contexts, and in general the factors "need not be applied in a formulaic way." *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *18 (quoting *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 166 (3d Cir. 2006)).  The factors are:

        1) the size of the fund created and the number of beneficiaries;

        2) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel;

        3) the skill and efficiency of the attorneys involved;

        4) the complexity and duration of the litigation;

        5) the risk of nonpayment;

        6) the time devoted to the case by plaintiffs' counsel;

        7) the awards in similar cases;

        8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;

        9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and;

        10) any innovative terms of settlement.

*Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *18 (quoting *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009)).  The second factor is not generally relevant in the context of FLSA settlements that only involve opt-in releases.  *See id.* at *10–11; *see also id.* at 20.  The fourth and fifth factors, which dovetail with the fourth, fifth, and sixth *Girsch* factors, strongly weigh in favor of approval of the Settlement for the reasons set forth above.  *See supra* p.10; *see also* Ex.  A ¶¶ 7, 8, 10, 14, 17, 19, 20, 22–27, 30; Ex. B ¶¶ 10-14; Ex.  C ¶¶ 9–11.  The eighth factor weighs in favor of approving the Settlement because all benefits obtained by the Collective Action Members are attributable to the efforts of

Joseph H. Chivers, Jeffrey W. Chivers, and Theodore I. Rostow, the Court should approve the settlement as agreed.

As an initial matter, the requested fees and expenses are below the percentages and amounts approved by the Courts in such matters.  "In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20-45%."  *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 U.S. Dist. LEXIS 112137, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015).  "Of particular relevance here, fee awards ranging from thirty to forty-three percent have been awarded in cases with funds ranging from $400,000 to $6.5 million which are comparatively smaller than many."  *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *21 (quotations omitted).  The Settlement falls squarely within this range and covers more than 1,200 Collective Action Members.  The percentage here is on the lower end of the range of percentages routinely approved in this Circuit for a fund of this size.  *See id.* at *22–*23 (surveying settlement percentages in FLSA actions).[5]

The quality of representation also weighs in favor of approval.  Collective Action Counsel includes attorneys with significant employment law as well as class and collective action experience. *See* Exs. A-C. The settlement agreement was reached by experienced and skilled counsel. Lead counsel has more than 30 years' litigation experience and has vast experience successfully litigating and settling wage and hour class and collective actions.  The settlement agreement was the result of significant legal and technical skill on the part of Plaintiff's counsel,

---

Plaintiff's counsel and of the named and opt-in Plaintiffs, rather than to government agencies or other groups.  *See Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *26.  The ninth factor weighs in favor of approval because, "[i]n private contingency fee cases, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."  *Id.* (quotations omitted).  The tenth factor weighs in favor of approval because there are no anomalous or innovative terms in the agreement.  *See id.* at *27.  The remaining factors—the first, third, sixth, and seventh factors—each strongly favor approving the settlement's fee components and are addressed above the line. *See infra* pp. 16–18.

[5] For these reasons, the first and seventh factors weigh in favor of approval of the Settlement.

and followed vigorous discovery, extensive analysis of Defendant's digital and paper records, the depositions of key witnesses, and extensive interviews with potential fact witnesses.

A lodestar cross-check confirms that the parties' agreed-upon attorneys' fees should be granted. To conduct the lodestar cross check, the Court first determines the lodestar from the total hours worked, "apply[ing] blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at * 29 (calculating the lodestar based on the rates and number of hours worked set forth in attorney declarations). The result "is compared to the proposed percentage fee award to confirm the reasonableness of that award. 'Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *Id.* at *28 (quoting *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*), 148 F.3d 283, 341 (3d Cir. 1998)). Multipliers from between 1.0 and 4.0 are appropriate in complex FLSA cases "because of the risk undertaken by Plaintiffs' counsel handling this matter on a contingent basis, the substantial attorney time and resources expended litigating the case and negotiating a settlement, the positive result obtained for the prospective class, and the public interests advanced by FLSA litigation." *Id.* at * 30.

The lodestar cross-check performed in this context is not a "full-blown lodestar inquiry" and "need entail neither mathematical precision nor bean-counting." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). The Third Circuit has expressly endorsed that "a court 'should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar jurisdiction.'" *Id.* at 306 n.16 (quoting *Report of the Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. at 243); *accord Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *28 (W.D. Pa. Oct. 22, 2019).

As set forth in the accompanying declarations, proposed Collective Action Counsel have expended more than 930 hours of attorney and staff time, with a blended lodestar as of August 6, 2021 of $532,482.5.[6]  *See* Ex. A ¶ 14.  The multiplier for the lodestar cross-check is thus less than 2.51, and that multiplier will decrease as Collective Action Counsel completes the substantial work still to be performed in connection with administering the Settlement.  *See* Ex. A ¶ 21.  This multiplier is well within the band of reasonable multipliers for an FLSA settlement.  *See, e.g.*, *Kapolka*, 2019 U.S. Dist. LEXIS 182359, at *30 (approving a multiplier of 2.54 in light of "the risk undertaken by Plaintiffs' counsel handling this matter on a contingent basis, the substantial attorney time and resources expended litigating the case and negotiating a settlement, the positive result obtained for the prospective class, and the public interests advanced by FLSA litigation"). The Court can and should approve the Attorneys' Fees and Expenses to which the Parties agreed in the Settlement.

## VI.   <u>Conclusion</u>

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Approval Order.

Dated:  August 18, 2021

By:     <u>/s/ Joseph H. Chivers</u>
         Joseph H. Chivers
         jchivers@employmentrightsgroup.com
         The Employment Rights Group LLC
         100 First Avenue, Suite 650
         Pittsburgh, PA 15222

         John R. Linkosky
         linklaw@comcast.net
         John Linkosky & Associates
         715 Washington Avenue
         Carnegie, PA  15106

---

[6] The substantial work Collective Action Counsel devoted to the prosecution and settlement of this case weighs heavily in favor of approving the settlement under the sixth factor.

Jeffrey W. Chivers
jwc@chivers.com
Chivers LLP
300 Cadman Plaza West
12th Floor
Brooklyn, NY 11201

Theodore I. Rostow
tir@chivers.com
Chivers LLP
300 Cadman Plaza West
12th Floor
Brooklyn, NY 11201

*Counsel for Plaintiff
and all others similarly situated*